IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY AUKER<br>　　　　　　Plaintiff,<br>　vs.<br><br>COUNTY OF LANCASTER<br>PENNSYLVANIA AND LANCASTER<br>COUNTY PRISON<br>　　　　　　Defendants. | CIVIL ACTION<br><br>No. 5:24-cv-01112<br><br>JURY TRIAL DEMANDED |

**REPLY BRIEF OF DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.　INTRODUCTION**

On July 14, 2025, Defendants, County of Lancaster, Pennsylvania (the "County") and Lancaster County Prison (the "Prison")(collectively, "Defendants"), filed a Motion for Summary Judgment ("Motion") and supporting Statement of Proposed Undisputed Facts ("Statement"). (ECF 28; ECF 29). On July 30, 2025, Plaintiff, Kelly Auker ("Plaintiff"), filed her Response to Defendants' Statement of Proposed Undisputed Facts and Plaintiff's Additional Material Disputed Facts ("Response") and Opposition to Defendants' Motion for Summary Judgment ("Opposition"). (ECF 30; ECF 30-1). Defendants now file this reply to the arguments raised in Plaintiff's Response and Opposition.

**II.　FACTUAL BACKGROUND**

For purposes of Defendants' Reply, Defendants again incorporate by reference their Statement. (ECF 29, Statement). However, Defendants must also briefly respond to Plaintiff's Response. Notably, out of the 70 paragraphs of proposed undisputed facts contained in Defendants' Statement, Plaintiff has admitted all but 5 of them. (ECF 30, Response, ¶¶ 1, 3-10, 12-15, 17-31, 33-67, 69-70). With regard to Plaintiff's five denials, Plaintiff supports two of them by simply referring generally to her Complaint. (ECF 30, Response, ¶¶ 2, 11). However, in response to a summary judgment motion, the nonmoving party may not rely on the unsupported allegations of the complaint. See Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990)("[U]nsupported allegations...and pleadings are insufficient to repel summary judgment.").

Furthermore, in response to paragraph 11 of Defendants' Statement regarding Corrective Action Reports issued to Plaintiff for violating the Prison's attendance policy from February 2017 to May 2017, Plaintiff contends the Corrective Action Reports were issued as a result of Plaintiff engaging in legally protected activity. (ECF 29, Statement, ¶ 11; ECF 30, Response, ¶ 11). However, Plaintiff has not identified any protected activity she engaged in prior to May 12, 2017, and she testified at her deposition that she believed her discipline comported with applicable Prison policies. (ECF 29-3, Auker Deposition, at 103:16-19).

Next, although Plaintiff denies Defendants' assertion in paragraph 16 of the Statement that she socialized with CO Nicklas outside of work prior to September 2019 and sought advice from CO Nicklas and his wife on life events, Plaintiffs' Response admits exactly what Defendants asserted with only her added characterization of the frequency of the socialization as being "extremely rare." (ECF 29, Statement, ¶ 16; ECF 30, Response, ¶ 16). Plaintiff also responded with additional details and claims not at all responsive to the assertions contained in paragraph 16 related to CO Nicklas's alleged "sexual harassment" of another CO. (ECF 30, Response, ¶ 16). However, in her deposition, Plaintiff admitted that the other CO simply said he was a "creeper" and did not provide any details as to CO Nicklas's actions or statements. (ECF 29-3, Auker Deposition, at 45:16-22).

Similarly, in response to paragraph 32 of the Statement, Plaintiff denies it as being "not an accurate statement of the law." (ECF 29, Statement, ¶ 31; ECF 30, Response, ¶ 31). However, paragraph 32 of the Statement constitutes a statement of fact, not a legal conclusion, and Plaintiff cannot and has not refuted the factual assertion contained therein.

Finally, Plaintiff denies Defendants' assertion in paragraph 68 that she resigned her position at the Prison on December 27, 2022 and instead claims she was constructively discharged. (ECF 29, Statement, ¶ 68; ECF 30, Response, ¶ 68). However, Plaintiff's assertion constitutes a legal conclusion, not a

statement of fact and, at her deposition, when asked if she resigned her position with the Prison in 2022, Plaintiff responded, "yes." (ECF 29-3, Auker Deposition, at 232:6-8).

### III. LEGAL ARGUMENT

In her Opposition, Plaintiff has conceded that Counts I, II, and IX should be dismissed. (ECF 30-1, Opposition, p. 1, 2, 7, 8, 21)[1]. In addition, Plaintiff has failed to point to any evidence of record which demonstrates that there is any genuine issue of material fact, and instead has admitted almost every factual assertion set forth in Defendant's Statement and Motion. As a result, and for the reasons fully set forth herein and in Defendant's Motion, Defendants respectfully requests that this Court grant their Motion and dismiss all claims asserted against them.

### A. Evidence Of Alleged Conduct/Incidents That Occurred Prior To March 10, 2020 (Title VII) Or July 8, 2020 (PHRA) Are Barred

In her Opposition, Plaintiff contends that the continuing violation exception applies. (ECF 30-1, Opposition, p. 5-7). However, to demonstrate the applicability of a continuing violation, the plaintiff must show that the violations are part of the same subject matter and occurred frequently. Cibula v. Fox, 570 Fed. Appx. 129, 135-136 (3d Cir. 2014). Furthermore, the same individuals must be involved in the same harassment over a period of time. Hilton v. Home Depot, Inc., 2022 WL 837207, *4 (E.D. Pa. Mar. 21, 2022). To support her argument, Plaintiff relies only upon her general assertion that she "experienced a continuing pattern and practice of workplace discrimination based on her gender/sex as well as retaliation." (ECF 30-1, Opposition, p. 7). Conspicuously, Plaintiff's argument provides no citation to the record and lacks reference to any dates, let alone any discussion of the alleged "discriminatory" actions that occurred, purposefully making it difficult to assess whether a "pattern" of conduct existed. Indeed, Plaintiff's claims arise from multiple, discrete occurrences by different actors that occurred over a period of three years. Beyond Plaintiff blending these events together, there is no relation between them.

---

[1] Because Plaintiff did not number the pages of her Opposition, all references are to the ECF page numbers.

B. **Summary Judgment Should Be Granted As To Plaintiff's Claims For A Hostile Work Environment Set Forth In Count V And Count VI**

1. **The alleged discrimination was not severe or pervasive**

In her Opposition, Plaintiff asserts that she experienced a hostile work environment and that the test of whether a hostile environment exists is the disjunctive "severe or pervasive." (ECF 30-1, Opposition, p. 8). However, regardless of the precise language employed, the discrete occurrences by different actors that occurred over a period of three years do not meet that test.

First, Plaintiff contends that the incident of CO Nicklas "sexually and physically assault[ing]" her meets the standard of "severe." (ECF 30-1, Opposition, p. 8). While an isolated incident may satisfy the standard, it can only do so if it is "extremely serious." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Here, CO Nicklas merely struck Plaintiff's buttocks with a book and walked away for which he was subsequently counseled and did not again touch Plaintiff inappropriately or say anything that she believed was inappropriate, harassing or discriminatory. (ECF 29, Statement, ¶¶ 17-24, 28; ECF 30, Response, ¶¶ 17-24, 28). Thus, although Plaintiff characterizes the incident as a "sexual and physical assault," nothing about the incident suggests it was sufficiently "severe" to meet the standard established by Faragher. See Carter v. Youth Opportunity Invs., LLC, 2019 WL 1491739, at *3 (M.D. Tenn. Apr. 4, 2019)(where plaintiff was "hit on the butt" with a key strap and characterized the incident as a "sexual assault," the court found that "[i]rrespective of the plaintiff's subjective perception of the event, no reasonable juror would consider that isolated incident, standing alone, to be sufficiently severe to give rise to a claim for hostile work environment. Moreover, the plaintiff does not allege that this incident was accompanied by sexually suggestive comments, lewd gestures, or other inappropriate behavior based on the plaintiff's sex that could establish pervasive conduct."); Friel v. Mnuchin, 2021 WL 6124314, *1 (3d Cir. Dec. 28, 2021)(affirming the District Court determination that no reasonable jury could find that isolated incident of an unwanted overture (i.e. tugging on his shirt), which was brief, non-threatening, and did not interfere with Friel's work, was sufficient to create an objectively hostile work environment); Davis

4

v. Wawa, 2025 WL 2024488, at *2 (E.D. Pa. July 18, 2025)("While disturbing and wholly inappropriate in the workplace, the incident of Mr. Marker rubbing Mr. Davis's chest and placing his hand on Mr. Davis's lower back is not extremely serious.").

Plaintiff also argues that she was "sexually and physically assaulted yet again" when CO Christner "touched her nipple in the process of groping" her. (ECF 30-1, Opposition, p. 9). According to Plaintiff, that incident, which she "estimates" happened in 2021 or 2022, occurred when CO Christner was helping her tighten a tactical vest and he touched her chest over the vest and said he felt her nipple. (ECF 29, Statement, ¶ 58; ECF 30, Response, ¶ 58). Given that Plaintiff cannot even identify an approximate date of this incident, it cannot be considered in the context of a hostile work environment assessment. See Shesko v. City of Coatesville, 292 F.Supp. 2d 719, 726 (E.D. Pa. 2003)(granting summary judgment on sex-based hostile work environment claim in part because of plaintiff's inability to identify "even approximate dates of the alleged comments, and in some instances...the year").

Nevertheless, the two incidents with CO Nicklas and CO Christner upon which Plaintiff solely bases her Opposition, which happened at least two years apart, do not rise to the level of severe or pervasive harassment. See Larochelle v. Wilmac Corp., 210 F. Supp. 3d 658, 684–85 (E.D. Pa. 2016), aff'd, 769 Fed. Appx. 57 (3d Cir. 2019)(finding two specific incidents the plaintiff cited (i.e. shoulder rubbing and a hug) that occurred over a nearly three-year period, as a matter of law, failed to rise to the level of "severe or pervasive" harassment); Funayama v. Nichia America Corp., 2011 WL 1399844, *13 (E.D. Pa. April 13, 2011)(finding that co-worker's asking plaintiff out on dates, touching her side, and making comments about her body over four-year period was not sufficiently severe or pervasive); Bowman v. Shawnee State Univ., 220 F.3d 456, 459, 464 (6th Cir. 2000)(dismissing hostile work environment claim where the plaintiff alleged that his supervisor had rubbed his shoulder on one occasion and "grabbed his buttocks" on another, finding that these events, even considered in conjunction with a

5

handful of sexually suggestive comments by the supervisor, were not sufficiently severe or pervasive to create a hostile work environment).

## 2. Respondeat superior liability does not exist

Next, Plaintiff asserts she established respondeat superior liability in this case. According to Plaintiff, the existence of Defendants' sexual harassment policies and procedures are not sufficient because there is no evidence they included retaliation, were disseminated or that supervisors were trained on them. (ECF 30-1, Opposition, p. 11-12). As a preliminary matter, while Plaintiff focuses on her claims that supervisors specifically are required to be trained on the anti-harassment policies, the cases upon which Plaintiff relies all involved sexual harassment by supervisors. See e.g. Soto v. John Morrell & Co., 285 F.Supp. 2d 1146 (N.D. Iowa 2003); Thomas v. BET Soundstage Restaurant, 104 F.Supp. 2d 558 (D. Md. 2000). Here, to the contrary, the allegedly hostile work environment was created by Plaintiff's non-supervisory coworkers and Plaintiff's focus on supervisors is simply a red herring.[2]

Furthermore, Plaintiff has admitted that Defendants have policies strictly prohibiting harassment and discrimination which include definitions of sexual harassment, hostile work environment and retaliation, as well as the procedures for making, investigating and resolving harassment and retaliation complaints. (ECF 29, Statement, ¶ 3-4; ECF 30, Response, ¶ 3-4). Plaintiff has also admitted that employees such as herself received training regarding the prevention of sexual harassment, including the procedures to follow if an employee believes he/she was being subjected to harassment or retaliation. (ECF 29, Statement, ¶ 7-8; ECF 30, Response, ¶ 7-8). Aside from Plaintiff's admissions, Defendants' Policy Manual clearly and explicitly prohibits workplace harassment and retaliation, defines hostile work environment and retaliation, provides the procedures for reporting harassment and retaliation complaints,

---

[2] The basis of an employer's liability for hostile environment sexual harassment depends on whether the harasser is the victim's supervisor or merely a coworker, and when the hostile work environment is created by a victim's non-supervisory coworkers, employer liability exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action. Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009).

and indicates that all employees, including supervisors, are required to attend anti-harassment and anti-discrimination training. (ECF 29-1, Policy Manual, p. 20-22). Thus, Plaintiff's contention that Defendants' policies are not disseminated and do not include anti-retaliation training is completely belied by the record. Scott v. Harris, 127 S.Ct. 1769, 1776 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

With regard to the incident involving CO Nicklas, it was immediately investigated when Plaintiff made a report of the incident. (ECF 29, Statement, ¶ 19-23; ECF 30, Response, ¶ 19-23). Following the investigation, CO Nicklas was verbally reprimanded that such behavior was never appropriate and ultimately received counseling for his actions, during which he was informed that his actions were unwelcomed by and offensive to Plaintiff and were in violation of Defendants' Sexual Harassment Policy, and was required to re-take Defendants' sexual harassment training. (ECF 29, Statement, ¶ 22, 24; ECF 30, Response, ¶ 22, 24). While Plaintiff does not believe this was a sufficient response, (ECF 30-1, Opposition, p. 13), she does not dispute that CO Nicklas did not harass her any further. (ECF 29, Statement, ¶ 28; ECF 30, Response, ¶ 28).

Plaintiff also claims Defendants should have known of CO Nicklas's "propensity to engage in sexually harassing behavior creating a hostile work environment" because she head that CO Nicklas sexually harassed another CO. (ECF 30-1, Opposition, p. 13-14). However, in her deposition, Plaintiff admitted that the other CO simply said he was a "creeper" and did not provide any details as to CO Nicklas's actions or statements. (ECF 29-3, Auker Deposition, at 45:16-22). In addition, while Plaintiff claims the CO reported this "harassment" to Defendants, Plaintiff admits that this alleged "knowledge" was simply hearsay. (ECF 29-3, Auker Deposition, at 46:1-9). As a result, Plaintiff's assertion cannot be considered and does not support her argument. See Nitkin v. Main Line Health, 67 F.4th 565, 571 (3d

7

Cir. 2023)(a plaintiff may not rely on "[b]are assertions, conclusory allegations, or suspicions" to defeat summary judgment); Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009)("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").

With regard to the incident involving CO Christner, Plaintiff contends it demonstrates respondeat superior liability because CO Christner was not "disciplined, trained, counseled or even spoken to about the incident." (ECF 30-1, Opposition, p. 14).  While Plaintiff suggests she complied with Defendants' policies by reporting the incident to Sergeant Martin, (ECF 30-1, Opposition, p. 13), the policy specifies that a complaint should be made verbally and in writing. (ECF 29-1, Policy Manual, p. 21).  However, as Plaintiff admitted, she did not ultimately file a report of the incident even though she was encouraged to do so. (ECF 29, Statement, ¶ 59; ECF 30, Response, ¶ 59).

Because Plaintiff cannot demonstrate that Defendants failed to provide a reasonable avenue for complaint or, alternatively, knew or should have known of the harassment and failed to take prompt and appropriate remedial action, Plaintiff has failed to establish respondeat superior liability. See Huston, 568 F.3d at 110 (affirming judgment as to hostile work environment claims where the plaintiff objected to the leniency of the sanctions P & G imposed on her co-workers, but did not dispute the fact that no further sexual harassment occurred after she reported her concerns because an employer cannot be liable under Title VII if its remedial action stopped the harassment); Knabe v. Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997)(finding defendant took actions that were "reasonably calculated to prevent further harassment" when it warned the perpetrator of the consequences of future misconduct and told the plaintiff who to contact if she experienced additional harassment because a defendant is not vicariously liable merely for inadequately investigating a complaint); Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992)(the non-moving party cannot rely on unsupported assertions, conclusory allegations, or conjecture or speculation in attempting to survive a summary judgment motion).

    **C.**    **Summary Judgment Should Be Granted As To Plaintiff's Claims For Retaliation Set Forth In Count VII And Count VIII**

As Defendants argued in their Motion, Plaintiff cannot meet her burden of showing that she was subject to an adverse employment action subsequent to engaging in protected activity or that a causal link exists between the protected activity and any adverse action. See Qin v. Vertex, Inc., 100 F.4th 458, 475 (3d Cir. 2024). In her Opposition, while Plaintiff asserts she has established a prima facie case of retaliation, she has failed to provide any basis for a jury to determine she was subject to an adverse employment action. In fact, Plaintiff's only attempt at addressing the "adverse employment action" element is to conclusively contend that constructive discharge constitutes a "tangible employment action" but that it "may not even be necessary to get to this discussion" "given the clear evidence through out both Plaintiff's and Defendants' pleadings and exhibits demonstrating illegal retaliation by managers and supervisors." (ECF 30-1, Opposition, p. 15-16). The remainder of Plaintiff's argument is simply a repeat of her argument regarding Defendants' policies that she made in response to the respondeat superior liability prong of a hostile work environment test.[3] (ECF 30-1, Opposition, p. 16-19).

In response to Defendants' argument that Plaintiff could not demonstrate she was subject to an adverse employment action, including constructive discharge, Plaintiff was required to "point to concrete evidence in the record that supports each and every essential element" of her case. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995). Because Plaintiff has not pointed to any concrete evidence to support her contention that she was constructively discharged, or experienced any other adverse employment action, she failed to establish a triable issue on her retaliation claims. See Nitkin, 67 F.4th at 571; see also Wiest v. Tyco Elecs. Corp., 812 F.3d 319, 331 (3d Cir. 2016)(no basis to support the

---

[3] To the extent Plaintiff claims she can support her opposition to summary judgment by relying on the EEOC's findings, and specifically suggests the EEOC's "rare" referral of the action to the United States Department of Justice provides proof of her allegations, (ECF 30-1, Opposition, p. 16), such an argument is without merit. Because Lancaster County is a public entity, the EEOC was required to refer the matter to the DOJ to issue a right to sue notice. See 29 C.F.R. § 1601.28 (d). Furthermore, the EEOC determination/referral letter is not admissible evidence on which Plaintiff can rely to meet her evidentiary burdens to defeat summary judgment. See Russell v. City of Philadelphia, 2016 WL 4478764, *5 (E.D. Pa. Aug. 25, 2016).

9

plaintiff's claim that he was constructively discharged where he failed to identify any evidence that would allow a reasonable jury could find that the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign).

## IV.  CONCLUSION

Based on the foregoing, and for the reasons set forth in their Motion for Summary Judgment, Defendants respectfully request that this Honorable Court grant the Motion and dismiss the claims against them with prejudice.

                          Respectfully Submitted,

                          **MARSHALL DENNEHEY, P.C.**

                          _____
                          John P. Gonzales, Esquire
                          2000 Market Street, Suite 2300
                          Philadelphia, PA 19103
                          (215) 575-2600
                          Attorney ID No.: 71265
                          jpgonzales@mdwcg.com
Dated: August 13, 2025            Attorney for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY AUKER<br><br>     Plaintiff,<br>vs.<br><br>COUNTY OF LANCASTER PENNSYLVANIA AND LANCASTER COUNTY PRISON<br><br>     Defendants. | CIVIL ACTION<br><br>No. 5:24-cv-01112<br><br>JURY TRIAL DEMANDED |

## **CERTIFICATE OF SERVICE**

  I, John P. Gonzales, Esquire hereby certifies that a true and correct copy of the foregoing Reply Brief of Defendants in Support of Motion for Summary Judgment, was electronically filed with the Court this date and is available for viewing and downloading from the ECF System.

                 **MARSHALL DENNEHEY, P.C.**

                 */s/ John P. Gonzales*

                 John P. Gonzales, Esquire
                 2000 Market Street, Suite 2300
                 Philadelphia, PA 19103
                 (215) 575-2600
                 Attorney ID No.: 71265
                 jpgonzales@mdwcg.com
                 Attorney for Defendants

Dated: <u>August 13, 2025</u>