UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLY AUKER | : | |
| | : | |
| v. | : | No. 24-cv-1112 |
| | : | |
| COUNTY OF LANCASTER PENNSYLVANIA, et al. | : | |

**ORDER**

**AND NOW**, this 7th day of January, 2026, upon consideration of Defendants' Motion for Summary Judgment (ECF No. 28) and the responses and replies thereto, and after oral argument being held, it is hereby **ORDERED** that the Motion is **GRANTED** in part and **DENIED** in part as follows:

1. Summary Judgment is **GRANTED** as to Counts I, II, and IX.[1]

2. Summary Judgment is **DENIED** as to Counts V, VI, VII, and VIII.[2]

---

[1] Summary Judgment is granted as to these counts because Plaintiff concedes them. *See* ECF No. 30-1 (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment) ("Opp.") at 8, 21.

[2] Plaintiff Kelly Auker was a corrections officer at Lancaster County Prison beginning in 2016. ECF No. 29 (Defendants' Statement of Undisputed Material Facts) ("SOMF") at ¶ 6. In short, Plaintiff alleges that certain co-workers at the Prison engaged in conduct that was sexually discriminatory, so much so that her eventual resignation in December 2022 was considered a constructive discharge. After Plaintiff's concession in the dismissal of some claims, the remaining causes of action before the Court for consideration are: (1) Count V: Sexual Harassment/Hostile Work Environment under Title VII; (2) Count VI: Sexual Harassment/Hostile Work Environment under the PHRA; (3) Count VII: Retaliation under Title VII; and (4) Count VIII: Retaliation under the PHRA. After oral argument on the Motion held on December 11, 2025, it is now ripe for disposition.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The Court draws all inferences in favor of the nonmoving party. *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004).

I will consider Counts V and VI together and Counts VII and VIII together because analysis under Title VII and the PHRA is identical. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009).

As an initial matter, Defendant argues that certain of the alleged conduct is barred from consideration by the statute of limitations. "To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (citing 42 U.S.C. § 2000e-5(e)(1)). Similarly, "[t]o bring suit under the [Pennsylvania Human Rights Act, or 'PHRA'], an administrative complaint must first be filed with the PHRC within 180 days of the alleged act of discrimination." *Id.* at 164 (citing 43 Pa. Stat. § 959(h)). Here, Plaintiff

filed her Charge of Discrimination on January 4, 2021.  SOMF at ¶ 69.  Therefore, Defendant argues, any acts prior to March 10, 2020 must be barred from consideration for Plaintiff's Title VII claims, and any acts prior to July 8, 2020 must be barred from consideration for PHRA claims, unless an exception exists.  *See* Mot. at 3.

One exception to the 180/300 day rule is the continuing violation theory.  Under this theory, "discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim." *Mandel*, 706 F.3d at 165.  If a plaintiff shows that "all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable period," then the Court may consider acts outside of the statute of limitations.  *Id.* at 165-66.  The plaintiff must allege that "many of the acts that occurred prior to the applicable limitations period involved similar conduct by the same individuals, suggesting a persistent, ongoing pattern." *Id.* at 167.

I hold that Plaintiff has demonstrated that there is a genuine dispute of material fact as to whether there was a continuing violation.  Specifically, although the conduct at issue came from a handful of individuals, there is a question as to whether it suggests a persistent, ongoing pattern.  Much of the complained-of conduct could plausibly be linked back to the initial reported incident involving CO Nicklas.  A jury might find that the conduct following that incident is sufficiently related to constitute a continuing violation.  Having determined that there is a question of fact as to whether there is a continuing violation, I am unable to rule out consideration of incidents outside of the statute of limitations when analyzing the merits of Plaintiff's claims.

As to the hostile work environment claims (Counts V and VI), I similarly hold that there are genuine issues of material fact that prevent summary judgment.  To succeed on a hostile work environment claim, Plaintiff must establish that (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability.  *Mandel*, 706 F.3d at 167.  Defendant takes issue with the second and fifth elements of Plaintiff's hostile work environment claim.

The first issue is whether the discrimination was severe or pervasive.  A plaintiff must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).  The Court considers the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  "Simple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment.  *Faragher v. Boca Raton*, 524 U.S. 775, 786-87 (1996) (internal quotations omitted).

Defendant would have me find that "Plaintiff's allegations are nothing more than a hodgepodge of facially neutral, isolated acts and misperceptions and speculation . . . spread out over a two year period."  Mot. at 14.  But, depending on the outcome of the continuing violation theory and, consequently, the statute of limitations analysis, there is a question of fact as to whether the conduct would be considered severe or pervasive.  A jury could find, for example, that the initial incident involving CO Nicklas, in which Plaintiff alleges that he slapped her on the buttocks with a book, is sufficiently severe.  *See, e.g.*, *Bearer v. Teva Pharms. USA, Inc.*, No. 19-cv-5415, 2021 WL 4145053, at *26 (E.D. Pa. Sept. 8, 2021) (holding that a slap on the buttocks by a company executive, in the context of the greater workplace environment, was sufficiently severe).  The Court in *Bearer* plainly noted, and I echo the sentiment, that "[c]ontext matters." *Id*.  I decline to blindly adopt reasoning that such incidents are *per se* not severe, especially considering that Plaintiff alleges somewhere around eight to ten different allegedly sexually discriminatory incidents over the course of three years.  A jury could similarly find that the alleged incidents were frequent enough to be considered pervasive.  There is, therefore, a question of fact, given the greater context of Plaintiff's workplace, as to whether the alleged discrimination was severe or pervasive.

The second issue is whether *respondeat superior* liability exists for Defendants.  The determination of whether an employer is responsible for any hostile work environment created by its employees depends on several factors.  The first question is whether the alleged harasser was a co-worker or supervisor to the Plaintiff.  If the harasser is a co-worker, the plaintiff must show that the employer failed to provide a reasonable avenue for complaint or, alternatively, that the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action.  *Huston*, 568 F.3d at 104.  If the harasser is a supervisor, an employer is strictly liable only if the supervisor's conduct rises to a tangible employment action.  *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).  If the supervisor

BY THE COURT:

/s/ Catherine Henry
**Catherine Henry, J.**

---

did not take a tangible employment action against the employee, the employer may raise as an affirmative defense to liability by showing that it "exercised reasonable care to prevent and correct any harassing behavior" and "that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Id.*

Here, Defendants' arguments as to why there is no *respondeat superior* liability seem to be that there are two categories of incidents in this case: (1) Incidents that Plaintiff properly reported and were remediated; and (2) Incidents that Plaintiff did not properly report and therefore Defendants had no notice of. As to the first category, Defendants say that Plaintiff reported some of the incidents to her supervisor as required for Defendants' reasonable avenue for complaint, and they took prompt remedial action. *See* Mot. at 16-18. As to the second category of incidents, although this argument is not made as clearly in the briefings, it became clear at oral argument that Defendants believe that Plaintiff did not report some of the incidents in accordance with Defendants' policies and therefore, they were not on notice and could not have taken any remedial action. This is where a question of fact arises. The parties disputed at oral argument whether Plaintiff reported some of the incidents to her supervisor, as set forth in Defendants' policies. For example, in at least one situation, Plaintiff told a lieutenant about purported harassment, but it is factually uncertain whether that lieutenant was acting in a supervisory capacity to Plaintiff at that time. Thus is the issue: When Plaintiff made reports of apparently sexually discriminatory conduct (even if informal), were those reports to her supervisor or just complaints to a co-worker? The legal analysis of whether Defendant is vicariously liable will turn on this fact.

Finally, as to the retaliation claim, I hold that there is a question of fact as to whether Plaintiff was subject to an adverse employment action. To establish a prima facie case for retaliation, a plaintiff must show: (1) she engaged in protected conduct; (2) she was subject to an adverse employment action subsequent to such conduct; and (3) a causal link exists between the protected activity and the adverse action. *Qin v. Vertex, Inc.*, 100 F.4th 458, 475 (3d Cir. 2024). After a plaintiff establishes the prima facie case, the burden shifts to the defendant to show a legitimate non-retaliatory reason for the adverse employment action. *Williams v. Mercy Health Sys.*, 866 F. Supp. 2d 490, 499 (E.D. Pa. 2012). If the defendant does so, the burden shifts back to the plaintiff to show that the reason provided is pretext. *Id.*

A reasonable jury could find that there was an adverse employment action, namely in the form of constructive discharge. To demonstrate an adverse employment action, a plaintiff must show that the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). Constructive discharge, in the context of an adverse employment action, "occurs when the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 78 (3d Cir. 2018) (internal quotations omitted). "To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006) (internal quotation omitted). Because I held there are questions of fact as to the severity of the complained-of conduct for Plaintiff's hostile work environment claim, I conclude that "the same juror could draw a similar inference that that hostile work environment drove [the plaintiff] to leave." *McGlotten v. Omnimax Int'l, Inc.*, 657 F. Supp. 3d 663, 676 (E.D. Pa. 2023). I therefore decline to enter summary judgment on Plaintiff's retaliation claims.